**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re:<br><br>LION FORCE TRANSPORT INC., *et al.*,[1]<br><br>Debtors in a Foreign Proceeding. | Chapter 15<br><br>Case No.: 26-_____ (___)<br><br>(Joint Administration Pending) |

**VERIFIED PETITION OF FOREIGN REPRESENTATIVE**
**FOR (I) RECOGNITION OF CANADIAN PROCEEDING AS FOREIGN MAIN**
**PROCEEDING, (II) RECOGNITION OF FOREIGN REPRESENTATIVE, AND**
**(III) RELATED RELIEF UNDER CHAPTER 15 OF THE BANKRUPTCY CODE**

The Fuller Landau Group Inc. ("Fuller"), the court-appointed Receiver (in such capacity, the "Receiver") and authorized foreign representative (in such capacity, the "Foreign Representative") of the above-captioned debtors (collectively, the "Lion Force Group" or the "Debtors"), which are the subjects of a receivership proceeding (the "Canadian Receivership"), pursuant to section 243(1) of the Bankruptcy and Insolvency Act, R.S.C. 1985, c. B-3, as amended (the "BIA") and section 101 of the Courts of Justice Act, R.S.O. 1990, c. C.43, as amended (the "CJA"), pending before the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court"), submits this verified petition (together with the form petitions filed simultaneously herewith, the "Verified Petition") for recognition of the Canadian Receivership as a "foreign main proceeding" and certain related relief pursuant to sections 105(a), 306, 362, 1504, 1507, 1509,

---

[1]      The chapter 15 debtors in these chapter 15 cases (the "Debtors"), along with the last four digits of the Debtors' Canadian business number, are as follows: Lion Force Transport Inc. (4050); 2696942 Ontario Inc. (6942); 2854233 Ontario Inc. (4233). The Debtors' executive headquarters are located at 27 Automatic Road, Brampton Ontario, L6S 5N8.

1510, 1515, 1517, 1519, 1520, 1521, 1525, and 1527 of title 11 of the United States Code (the "Bankruptcy Code").

In support of the Verified Petition, the Foreign Representative has filed contemporaneously herewith (a) the *Declaration of Foreign Representative Pursuant to 11 U.S.C. § 1515 and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure and in Support of Verified Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* (the "Foreign Representative Declaration") and (b) the *Declaration of Roger Jaipargas in Support of Verified Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* (the "Jaipargas Declaration"), each of which are incorporated herein by reference. The Foreign Representative has also filed the *Motion for Provisional Relief Pursuant to Section 1519 of the Bankruptcy Code* (the "Provisional Relief Motion") contemporaneously herewith.

## PRELIMINARY STATEMENT

1.      As set forth more fully below, the Canadian Receivership was commenced in the Canadian Court on May 1, 2026, by Royal Bank of Canada ("RBC"), a secured lender of the Debtors.

2.      On May 15, 2026, Fuller was duly appointed by order of the Canadian Court (the "Appointment Order") as the Receiver without security, over all of the assets, undertakings and properties of the Debtors acquired for, or used in relation to, businesses carried on by the Debtors, and all proceeds thereof (collectively, the "Property") and as Foreign Representative. Accordingly, the Foreign Representative filed each of the Debtors' petitions for recognition under chapter 15 (collectively, the "Petitions") commencing these chapter 15 cases (the "Chapter 15

Cases") as ancillary proceedings to the Canadian Receivership, and respectfully files this Verified Petition for recognition contemporaneously with the required accompanying documentation pursuant to sections 1501, 1504, 1509, 1514, and 1515 of the Bankruptcy Code.

3.      The Debtors comprise a group of companies operating as a transportation logistics company that serviced clients located in the Midwest and Southern United States as well as Ontario and Quebec.  The Debtors own approximately 80 trailers located in Texas and Michigan.

4.      Through the Canadian Receivership, the Receiver intends to realize on the Debtors' remaining assets and, if warranted, prepare for a claims resolution process under the oversight of the Canadian Court.  The Foreign Representative has commenced these Chapter 15 Cases to ensure the effectiveness of the Appointment Order, and the protections and powers contained therein, in the United States, as well as to facilitate the fair and efficient administration of the Canadian Receivership.  These Chapter 15 Cases serve a critical role in effectuating a fair and orderly realization process with respect to the Property, which will be made possible through the Canadian Receivership.  Specifically, these Chapter 15 Cases will (i) protect the interests of the Debtors and their creditors in valuable assets located in the United States, (ii) prevent Lion Force's stakeholders from commencing actions in the United States that are more properly the subject of the Canadian Receivership or that will interfere with its orderly administration, and (iii) permit the Receiver to seek enforcement of further relief obtained from the Canadian Court that may address issues related to the sale of the Debtors' assets, and to their U.S. customers and stakeholders.[2]  For the reasons set forth herein, the Foreign Representative submits that the relief requested in this

---

[2]      For the avoidance of doubt, nothing herein constitutes or shall be construed as an admission of any purported liability with respect to any obligation, including financial indebtedness or claims, for which the Debtors and the Receiver reserve all rights and defenses.

Verified Petition is necessary and appropriate for it to fulfill its mandate of preserving, protecting and realizing on the Property of the Debtors.

## JURISDICTION AND VENUE

5.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and the Standing Order of Reference from the United States District Court for the Southern District of Texas, dated May 24, 2012. Recognition of a foreign proceeding and other matters under chapter 15 of the Bankruptcy Code are core matters under 28 U.S.C. § 157(b)(2)(P).

6.      These Chapter 15 Cases have been properly commenced with respect to each of the Debtors in accordance with sections 1504 and 1509(a) of the Bankruptcy Code by the filing of the Verified Petition.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1410(1) as (i) Lion Force Transport Inc. owns approximately 70 trailers located in Texas; and (ii) each of the Debtors has property in the United States in the form of a legal retainer held in the Dallas, Texas client IOLTA account of Ashurst Perkins Coie US LLP at Wells Fargo Bank.[3]  The Foreign Representative, solely in its capacity as such, consents to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

8.      The statutory bases for the relief requested herein are sections 105(a), 306, 362, 1504, 1507, 1509, 1510, 1515, 1517, 1519, 1520, 1521, 1525, and 1527 of the Bankruptcy Code,

---

[3]      For purposes of section 109(a) of the Bankruptcy Code, "property in the United States" has been held to include an attorney retainer in a U.S. bank account. *See In re Cell C Proprietary Ltd.*, 571 B.R. 542, 552 (Bankr. S.D.N.Y. 2017); *In re Berau Capital Resources Pte Ltd.*, 540 B.R. 80, 82 (Bankr. S.D.N.Y. 2015); *In re Octaviar Administration Pty Ltd.*, 511 B.R. 361, 372 (Bankr. S.D.N.Y. 2014); *see also In re Siu-Fung Ceramics Holdings Ltd.*, No. 24-33299, 2026 WL 382424 at *19 (Bankr. S. D. Tex. Feb. 10, 2026) (citing Second Circuit authority).

and rule 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

## RELIEF REQUESTED

9.      The Foreign Representative requests that this Court enter an order, substantially in the form attached hereto as **Exhibit A**, and pursuant to sections 105(a), 306, 362, 1504, 1507, 1509, 1510, 1515, 1517, 1519, 1520, 1521, 1525, and 1527 of the Bankruptcy Code, that provides, among other things, the following relief (collectively, the "Relief Requested"):

    a.    Granting the Verified Petition and recognizing the Canadian Receivership as a foreign main proceeding (as defined in section 1502(4) of the Bankruptcy Code) pursuant to section 1517 of the Bankruptcy Code;

    b.    Recognizing the Foreign Representative as a "foreign representative" as defined in section 101(24) of the Bankruptcy Code;

    c.    Enforcing and giving full force and effect in the United States to the Canadian Receivership and the Appointment Order, including any and all extensions or amendments to that order as authorized by the Canadian Court in the future;

    d.    Protecting the rights of creditors and protecting and maximizing the value of the Debtors' assets, in accordance with section 1501 of the Bankruptcy Code;

    e.    Providing the Receiver, if and/or when appropriate, additional assistance contemplated by section 1507 of the Bankruptcy Code;

    f.    Granting the Receiver all rights afforded by section 1509 of the Bankruptcy Code, including, but not limited to (i) the Receiver's capacity to sue in a court in the United States, (ii) the Receiver's right to apply directly to a court in the United States for appropriate relief in such court, and (iii) the requirement that a court in the United States shall grant comity or cooperation to the Receiver;

    g.    Granting the Receiver all of the relief afforded pursuant to section 1520 of the Bankruptcy Code, including but not limited to the "automatic stay" under section 362 of the Bankruptcy Code, and the application of sections 363, 549, and 552 pertaining to transfers of an interest of any of the Debtors' in property—all of which shall apply with respect to the Debtors and their property that is now or in the future located within the territorial jurisdiction of the United States;

h. Staying the commencement or continuation of actions concerning the Debtors' assets, staying execution of the Debtors' assets, suspending any right to transfer, encumber or otherwise dispose of any of the Debtors' assets, and providing for the examination of witnesses or taking evidence concerning the Debtors' assets, affairs, rights, obligations or liabilities, consistent with section 1521 of the Bankruptcy Code;

i. Providing that the Receiver may intervene in any proceedings in State or Federal court in the United States in which any of the Debtors may be a party;

j. Granting pursuant to section 1521 of the Bankruptcy Code (or section 1507 as the Court deems necessary) on a final basis any provisional relief requested in the Motion for Provisional Relief;

k. Pursuant to sections 1519(a)(3) and 1521(a)(7) of the Bankruptcy Code, providing that section 108 of the Bankruptcy Code is made applicable to the Debtors in these Chapter 15 Cases; and

l. Providing such other relief as the Court deems just and proper.

## BACKGROUND

## I.  THE DEBTORS' CORPORATE STRUCTURE AND CANADIAN OPERATIONS

10.     The Debtors are part of a group of six companies, of which three entities, Lion Force Transport Inc. ("Lion Force"), 2696942 Ontario Inc. ("269" and together with Lion Force, the "Borrowers") and 2854233 Ontario Inc. ("285"), are Debtor-entities. Although the Debtors are structured as stand-alone entities, as reflected in the organizational chart below (submitted by the Debtors and their affiliates in the CCAA Application (as defined below)) prior to the Canadian Receivership, the Debtors along with the non-Debtor affiliates operated as a single, integrated business enterprise.

| Legend |
| --- |
| CCAA applicant<br>*non-CCAA applicant |

| Lion Force Transport Inc. ("Lion Force") | 2696942 Ontario Inc. ("269") | 1000633065 Ontario Inc. D/A/A Torque Titans | 2854233 Ontario Inc. ("285") | *100035370 Ontario Inc. | Lion Force US Transport Inc. | HMS Connects Inc. |
| --- | --- | --- | --- | --- | --- | --- |

11. Lion Force has approximately CAD 16,420,000 of book value equipment, including trucks and trailers, and approximately CAD 3,486,000 of accounts receivable. As of the date of these Petitions, the Receiver has terminated all of the Lion Force's remaining employees and operations.

12. Lion Force is headquartered at 27 Automatic Road, Brampton Ontario (the "Brampton Facility"). The Brampton Facility served as the Debtors' principal place of business, housing its administrative offices and truck storage facilities. The Brampton Facility is owned by 269. 285 previously owned real property located in Ontario, which was liquidated prior to the Canadian Receivership and the proceeds paid to RBC to satisfy obligations under the Credit Agreements and to another secured creditor of 285.

13. The Debtors' books and records are located at the Brampton Facility. All of the Debtors' directors and officers are located in Ontario, where, prior to the Canadian Receivership, key corporate decisions for the Debtors were made. Since Fuller's appointment as Receiver, and as of the filing of the Petitions, management decisions in respect of the Debtors are made at Fuller's offices located at 151 Bloor Street West, 12th floor, Toronto ON, M5S 1S4.

## II.   KEY U.S. ASSETS

14. As of the commencement of the Canadian Receivership, Lion Force has approximately 80 trailers located in Texas and Michigan. The Receiver is currently attempting to establish control over these U.S. assets and the Receiver has met resistance from certain parties presently in control of certain trailers located in Texas due to amounts purportedly owed to them by the Debtors prior to the filing of the Canadian Receivership.

15. Lion Force also owns accounts receivable in excess of USD $1,900,000 owed to due from contract counterparties subject to agreements governed by U.S. law and for whom Lion

Force provided transportation services in the United States.  The Receiver is in the process of attempting to collect these accounts.

16.     Lion Force also has a bank account at City National Bank (operating as RBC Bank (Georgia), N.A.) ("CNB"), located in North Carolina, with a balance of $173,165.99 USD, as of July 14, 2026.  The Receiver has requested that CNB turnover the funds in this account to the Receiver but CNB has declined to do so pending recognition of the Canadian Receivership by the United States Bankruptcy Court.

17.     The Receiver has provided its U.S. counsel, Ashurst Perkins Coie US LLP, with a legal retainer in the amount of $50,000 USD, which is held in its Dallas, Texas client IOLTA account at Wells Fargo Bank. The retainer was funded to support the Debtors' U.S. legal representation, including the commencement and prosecution of these Chapter 15 Cases and related matters.

## III.     THE DEBTORS' CREDIT FACILITIES, DEFAULTS, AND FORBEARANCE

### A.     The RBC Credit Facilities

18.     Pursuant to a loan agreement dated as of March 11, 2024, between RBC as lender and Lion Force as borrower, RBC provided Lion Force with a CAD 6,000,000 revolving demand facility, as well as a CAD 1,500,000 revolving lease line of credit, and a $125,000 credit card facility available in CAD and USD (the "Lion Force Credit Agreement").  Pursuant to an amended and restated loan agreement dated September 9, 2024 between RBC as lender and 269 as borrower, RBC provided 269 with a $42,000,000 non-revolving term facility, as well as a $2,682,000 non-revolving term facility and a $15,000 credit card facility available in CAD and USD (the "269 Credit Agreement" and together with the Lion Force Credit Agreement, the "Credit Agreements").  Each of the Debtors has cross-guaranteed the Borrowers' obligations to RBC pursuant to the following written corporate guarantees and postponements of claims:

a. the guarantee and postponement of claim limited to the principal amount of CAD 7,625,000 plus interest, dated April 11, 2024, granted by 269 regarding the obligations of Lion Force to RBC;

b. the guarantee and postponement of claim limited to the principal amount of CAD 7,625,000 plus interest, dated April 11, 2024, granted by 285 regarding the obligations of Lion Force to RBC;

c. the guarantee and postponement of claim limited to the principal amount of CAD 55,864,000 plus interest, dated April 11, 2024, granted by 285 regarding the obligations of 269 to RBC; and

d. the guarantee and postponement of claim limited to the principal amount of CAD 55,864,000 plus interest, dated April 11, 2024, granted by Lion Force regarding the obligations of 269 to RBC.

19.    In addition, Lion Force's obligations to RBC, including, without limitation, those under the Credit Agreements, are also guaranteed by Honey Hundal, Sukjiwan Singh Kaijla, and Maninder Singh Nijjar, the Debtors' sole directors and officers (the "Personal Guarantors" and together with the Debtors' the "Credit Parties") pursuant to the written joint and several personal guarantee and postponement of claim limited to the principal amount of $7,625,000 plus interest, dated April 11, 2024 (the "Personal Guarantees").

### B.    Defaults of the Debtors and Forbearance Agreements

20.    The Borrowers have been in default of their obligations to RBC under the Credit Agreements since September of 2024.  On February 6, 2025, RBC entered into a first forbearance agreement with the Credit Parties (the "Original Forbearance Agreement").   The Original Forbearance Agreement was subsequently amended and extended on several occasions. On March 28, 2025, the parties entered into an amended forbearance agreement permitting a temporary borrowing "bulge" of approximately $2.2 million (the "Temporary Bulge") and extending the Forbearance Period (as defined therein) to April 7, 2025 (the "First Amending Agreement"). Among other things, Lion Force was required to provide evidence of a $1.5 million equity injection to reduce the Temporary Bulge. The Debtors did make a total equity injection of $1.25 million in

various installments between October 2, 2025 and November 18, 2025, but the terms of this extension agreement were largely not complied with.

21.    On May 9, 2025, the Forbearance Period under the Original Forbearance Agreement was further extended to August 31, 2025 pursuant to an amended and restated forbearance agreement (the "Amended and Restated Forbearance Agreement"). Pursuant to the terms of the Amended and Restated Forbearance Agreement, the Credit Parties were expected to indefeasibly repay the amounts owing under the Credit Facilities to RBC by August 31, 2025. The Borrowers were also required to comply with various reporting obligations, including providing copies of any refinancing term sheets and financial information required by Fuller regarding priority obligations. The terms of the Amended and Restated Forbearance Agreement were also not complied with. Specifically, the Borrowers failed to provide (i) monthly company prepared financial statements comprised of balance sheets, income statements and cash flow statements within 45 days of each month-end, and (ii) monthly cash flow forecasts for the period from May 31, 2025 to August 31, 2025, with a monthly variance analysis to be provided within seven days of each month end.

22.    On September 12, 2025, the Credit Parties entered into a second amended and restated forbearance agreement (the "Second Amended and Restated Forbearance Agreement"), which provided for a Forbearance Period to December 31, 2025, in accordance with the terms stated therein. During the pendency of this Forbearance Period, the Credit Parties continued to default on their obligations to RBC. Among other things, Lion Force failed to deliver its 2025 fiscal year-end financial statements within 90 days of year-end, failed to provide monthly financial reporting including cash flow projections, a cash flow model and actual-to-forecast variance reports, and was still not current in respect of certain priority obligations. Furthermore, as a

condition of the Second Amended and Restated Forbearance Agreement, Lion Force was required to make the following paydowns in respect of the amounts owing to RBC under the Credit Agreements: (i) $1 million within two weeks of signing; (ii) a further $1 million within 30 days of signing; and (iii) a $20,000 forbearance fee due on execution. The terms of this extension were also not complied with.

23.     Despite the above-noted defaults, a final forbearance extension was entered into on December 19, 2025, extending the Forbearance Period to March 31, 2026. That agreement again required the Credit Parties, as applicable, to, among other things, remedy outstanding reporting deficiencies and ensure that all priority payables, including, without limitation, property tax arrears, were brought current. The Credit Parties were also required to make a capital injection of $750,000 by no later than December 31, 2025. The terms of this extension, including financial reporting on cash flow projections, monthly financial statements and actual-to-forecast variance reports, were also not fulfilled.

24.     On March 6, 2026, RBC proceeded to make formal written demand on the Debtors and the Personal Guarantors for payment of the amounts owed to RBC in respect of the Credit Agreements, the corresponding corporate guarantees, and the Personal Guarantees.

**C.      The Canadian Receivership and Appointment Order**

25.     On May 1, 2026, following the defaults by the Borrowers, RBC filed its Notice of Application under the BIA and CJA seeking to have a receiver appointed.  On May 14, 2026, the Debtors, in conjunction with three non-Debtor entities, filed a competing application to pursue a restructuring proceeding under the Canadian *Companies' Creditors Arrangement Act* (the "CCAA Application").

26. On May 15, 2026, the Canadian Court conducted a hearing for the appointment of the Receiver. The Canadian Court entered the Appointment Order dismissing the CCAA Application and appointing Fuller as the Receiver of the Property.

## BASIS FOR RELIEF

27. Chapter 15 of the Bankruptcy Code is designed to protect and maximize the value of a debtor's assets and avoid disruptions that could otherwise derail a debtor's insolvency process in its home country. Consistent with these principles, the Foreign Representative seeks the protection of this Court afforded to foreign debtors under chapter 15 of the Bankruptcy Code to recognize the legal effect of the Canadian Receivership to ensure the effectiveness of the Appointment Order and the protections and powers contained therein in the United States. The Receiver has concluded that such relief is necessary in order to fulfill its mandate of preserving, protecting, and realizing on the property of the Debtors. *See* 11 U.S.C. § 1501.

## I. THE DEBTORS ARE ELIGIBLE FOR CHAPTER 15 RELIEF.

28. To be eligible for chapter 15 relief, debtors must meet the general eligibility requirements under section 109(a) of the Bankruptcy Code as well as the more specific eligibility requirements under section 1517(a) of the Bankruptcy Code. *See In re Siu-Fung Ceramics Holdings Ltd.,* No. 24-33299, 2026 WL 382424 at \*19 (Bankr. S. D. Tex. Feb. 10, 2026) (citing *In re Barnet*, 737 F.3d 238, 247 (2d Cir. 2013).

29. In addition, the petition for recognition must meet the requirements of section 1515 of the Bankruptcy Code and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). If these elements are satisfied, the Bankruptcy Court must grant recognition. *See In re Black Gold S.A.R.L.*, 635 B.R. 517, 527 (B.A.P. 9th Cir. 2022) ("Congress' use of the word 'shall' in § 1517(a) removed the court's discretion in determining recognition if the requirements in the three subparagraphs of § 1517(a) have been satisfied.").

-12-

30.     Section 109(a) of the Bankruptcy Code provides that "only a person that resides or has a domicile, a place of business, or property in the United States . . . may be a debtor under this title." 11 U.S.C. §109(a).  For section 109(a) purposes, funds held by counsel as an undrawn retainer satisfy the "property in the United States" requirement for eligibility as a chapter 15 debtor. *In re Avanti Commc'ns Grp. PLC*, 582 B.R. 603, 613 (Bankr. S.D.N.Y. 2018); *see also In re Siu-Fung Ceramics,* 2026 WL 382424 at *19 (citing Second Circuit case law for the same proposition and stating that "[a]llowing debtors who otherwise have no property or presence in the United States to more easily file for recognition under Chapter 15 furthers the statutory objectives laid out in section 1501—'namely, cooperation between U.S. and foreign courts, fair and efficient cross-border administration, and maximization of the value of the debtor's assets.'")

31.     Accordingly, each of the Debtors is eligible to be a debtor under section 109(a) of the Bankruptcy Code because they own property in the United States in the form of:

a. a $50,000 retainer held by U.S. counsel in a client IOLTA account in Dallas, Texas for the benefit of each of the Debtors.  *See In re Octaviar Admin. Pty Ltd.*, 511 B.R. 361, 372-74 (Bankr. S.D.N.Y. 2014) ($10,000 in a client trust account was sufficient to satisfy the requirements of 109(a) of the Bankruptcy Code); *accord In re Suntech Power Holdings Co., Ltd.*, 520 B.R. 399, 413 (Bankr. S.D.N.Y. 2014); *In re Yukos Oil Co.*, 321 B.R. 396, 401 (Bankr. S.D.Tex. 2005) (amounts deposited into bank account located in the jurisdiction were sufficient to satisfy section 109(a);

b. approximately 80 trailers located in Texas and Michigan owned by Lion Force;

c. accounts receivable in an amount not less than $1.9 million owed to Lion Force by U.S. contract counterparties; *see In re World of English, N.V.*, 16 B.R. 817, 819 (Bankr. N.D. Ga. 1982 ) ("[T]he situs of an account receivable is the location of the account debtor"); and

d. a bank account owned by Lion Force at City National Bank, (operating as RBC Bank (Georgia), N.A.) located in North Carolina with a balance of $173,165.99 USD, as of July 14, 2026.

32.     For these reasons, the Debtors satisfy the requirements under section 109(a) of the Bankruptcy Code.

## II.     THE COURT SHOULD RECOGNIZE THE CANADIAN RECEIVERSHIP AS A FOREIGN MAIN PROCEEDING.

33.     Section 1517(a) of the Bankruptcy Code provides that, after notice and a hearing, "an order recognizing a foreign proceeding shall be entered if . . . (1) such foreign proceeding for which recognition is sought is a foreign main proceeding . . . within the meaning of section 1502; (2) the foreign representative applying for recognition is a person or body; and (3) the petition meets the requirements of section 1515." *See* 11 U.S.C. § 1517(a).  The Canadian Receivership satisfies all such requirements.

### A.     The Canadian Receivership is a Foreign Proceeding.

34.     The Canadian Receivership is a foreign proceeding as defined under section 101(23) of the Bankruptcy Code.  Section 101(23) requires that a "foreign proceeding" be (i) a collective judicial or administrative proceeding relating to insolvency or adjustment of debt; (ii) pending in a foreign country; and (iii) under the supervision of a foreign court, for the purpose of reorganizing or liquidating the assets and affairs of the debtor.  *See* 11 U.S.C. § 101(23).  The statute defines "foreign court" as "a judicial or other authority competent to control or supervise a foreign proceeding." *See* 11 U.S.C. § 1502(3).

35.     Courts have held that a foreign representative seeking recognition of a "foreign proceeding" must prove that such proceeding:

     a.   is either judicial or administrative;

     b.   is collective in nature;

     c.   is in a foreign country;

     d.   is authorized or conducted under a law related to insolvency or the adjustment of debts;

-14-

     e.   is one in which the debtor's assets and affairs are subject to the control or supervision of a foreign court; and

     f.   is for the purpose of reorganization or liquidation.

*See In re Betcorp Ltd.*, 400 B.R. 266, 277 (Bankr. D. Nev. 2009); *see also In re Ran*, 607 F.3d 1017, 1021 (5th Cir. 2010) (affirmatively citing *Betcorp*).

36.    Courts routinely recognize Canadian insolvency proceedings, including Canadian receiverships, as "foreign proceedings." *See, e.g., In re Giftcraft Ltd.*, Case No. 25-11030 (Bankr. S.D.N.Y. June 16, 2025) Dkt. No. 37 (recognizing Canadian receivership as foreign main proceeding); *In re Mood Media Corp.*, Case No. 17-11413 (Bankr. S.D.N.Y. June 28, 2017) Dkt. No. 44 (recognizing Canadian Proceedings as foreign main proceedings as to Mood Media Corporation); *In re Antamex Industries ULC*, Case No. 24-10934 (Bankr. D. Del. June 4, 2024) Dkt. No. 35 (recognizing Canadian receivership as a foreign main proceeding); *In re Simex Inc.*, Case No. 24-10083 (Bankr. D. Del. Feb. 20, 2024) Dkt. No. 39 (recognizing Canadian proceeding commenced under Canada's Companies' Creditors Arrangement Act as a foreign main proceeding); *In re Yatsen Group of Companies Inc., et al.*, No. 21-10073 (Bankr. D. Del. Feb. 24, 2021) Dkt. No. 42 (same); *In re Hematite Holdings Inc., et al.*, No. 20-12387 (Bankr. D. Del. Oct. 15, 2020) Dkt. No. 35 (same).

37.    As set forth in the Jaipargas Declaration, the Canadian Receivership is pending before the Canadian Court under the BIA and satisfies each of the foregoing requirements. The Court should, therefore, determine that the Canadian Receivership qualifies as a "foreign proceeding" for purposes of section 101(23) of the Bankruptcy Code.

**B.    The Canadian Receivership is a "Foreign Main Proceeding" Under Section 1502 of the Bankruptcy Code.**

38.    Under section 1502 of the Bankruptcy Code, the term "foreign main proceeding" means "a foreign proceeding pending in the country where the debtor has the center of its main

interests." 11 U.S.C. § 1502(4). Section 1516 of the Bankruptcy Code establishes a rebuttable presumption that the debtor's registered office is the debtor's center of main interests ("CoMI"). *See* 11 U.S.C. § 1516(c). When considering a debtor's CoMI, courts may consider the analogous concept of an entity's "principal place of business" or "nerve center." *In re Fairfield Sentry Ltd.*, 714 F.3d 127, 132 n.10 (2d Cir. 2013). As such, courts will look to factors such as the location of the debtor's headquarters, the location of those who actually manage the debtor, and the location of the debtor's primary assets, among other things, to determine the foreign debtor's CoMI. *Id.* at 130.

39.     Lion Force Group operates as a combined enterprise with its center of operations in Ontario, Canada. The CoMI of the Debtors is located in Canada for the following reasons:

   a. Lion Force Group operates out of the Brampton Facility, which contains the Debtors' books and records;

   b. Lion Force, 269, and 285 are each incorporated under the *Business Corporations Act* (Ontario);

   c. the Debtors' directors and officers are located in Ontario, where, prior to the Canadian Receivership key corporate decisions were made; and

   d. the Receiver is currently managing the Debtors' affairs and assets from Ontario, Canada.

40.     Consequently, there is a rebuttable presumption that the Debtors' CoMI is located in Canada.

**C.     These Chapter 15 Cases Have Been Commenced by a Duly Authorized Foreign Representative.**

41.     The Receiver is duly authorized to act as Foreign Representative in these Chapter 15 Cases because it is a foreign person or body petitioning for recognition, as required by section 1517(a) of the Bankruptcy Code. Further, the term "foreign representative" is defined under section 101(24) of the Bankruptcy Code as: "a person or body, including a person or body

appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding." 11 U.S.C. § 101(24).

42.     Here, pursuant to the Appointment Order, Fuller was appointed as Receiver and manager, without security, of all the Debtors' Property.  Appointment Order ¶ 2.  In the Appointment Order, the Receiver was specifically authorized and empowered to seek chapter 15 recognition of the Canadian Receivership, including authorization "to act as a representative in respect of the within proceedings for the purpose of having these proceedings recognized in a jurisdiction outside Canada, including acting as a foreign representative of the Debtors to apply to the United States Bankruptcy Court for relief pursuant to Chapter 15 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1530, as amended." *Id.* at ¶ 32.

43.     Accordingly, the Foreign Representative is a proper "foreign representative" within the meaning of section 101(24) of the Bankruptcy Code. *See also* 11 U.S.C. § 1516(a) ("If the decision [commencing the foreign proceeding] . . . indicates . . . that the person or body is a foreign representative, the court is entitled to so presume.").

**D.     The Petition for Recognition Meets the Requirements of Section 1515 of the Bankruptcy Code and Bankruptcy Rule 1007(a)(4).**

44.     These Chapter 15 Cases were duly and properly commenced by filing the Petitions and this Verified Petition accompanied by all fees, documents, and information required by the Bankruptcy Code and the Bankruptcy Rules, including:  (a) a corporate ownership statement containing the information described in Bankruptcy Rule 7007.1; (b) a list containing (i) the names and addresses of all persons or bodies authorized to administer foreign proceedings of the Debtors, (ii) all parties to litigation pending in the United States in which the Debtors are a party at the time of the filing of the Petitions, and (iii) all entities against whom provisional relief is being sought

under section 1519 of the Bankruptcy Code; (c) a statement identifying all foreign proceedings with respect to the Debtors that are known to the Foreign Representative; and (d) a certified copy of the Appointment Order.   In addition, the Foreign Representative Declaration filed contemporaneously herewith constitutes further evidence of the existence of the Canadian Receivership and of the appointment of the Receiver as the foreign representative as set forth in section 1515(b)(3) of the Bankruptcy Code.

45.     Having filed the above-referenced documents and because the Court is entitled to presume the authenticity of such documents filed in connection with the Chapter 15 Petition under section 1516(b) of the Bankruptcy Code, the requirements of section 1515 of the Bankruptcy Code and Bankruptcy Rule 1007(a)(4) have been met, and these Chapter 15 Cases have been properly commenced.  *See* 11 U.S.C. §§ 1504, 1509(a), 1515; Bankruptcy Rule 1007(a)(4).

### III.   THE DISCRETIONARY RELIEF REQUESTED IS NECESSARY AND APPROPRIATE AND SHOULD BE GRANTED.

46.     In connection with recognition of the Canadian Receivership, the Foreign Representative seeks certain related relief, including enforcement of the Appointment Order (and any amendments made thereto in the future) in the United States, and application of sections 362 and 365(e) of the Bankruptcy Code in these Chapter 15 Cases.  The Foreign Representative respectfully submits that such relief is warranted under sections 105(a), 1507, and 1521 of the Bankruptcy Code and the general principles of comity that underpin chapter 15.

47.     Upon recognition of a foreign proceeding, section 1521(a) authorizes the Court to grant "any appropriate relief" at the request of the recognized foreign representative "where necessary to effectuate the purpose of [chapter 15] and to protect the assets of the debtor or the interests of the creditors."  Such relief may include:

a.  staying the commencement or continuation of an individual action or proceeding concerning the debtor's assets, rights, obligations or liabilities to the extent they have not been stayed under section 1520(a) of the Bankruptcy Code;

b.  staying execution against the debtor's assets to the extent it has not been stayed under section 1520(a) of the Bankruptcy Code;

c.  suspending the right to transfer, encumber or otherwise dispose of any assets of the debtor to the extent this right has not been suspended under section 1520(a) of the Bankruptcy Code; and

d.  granting any additional relief that may be available to a trustee, except for relief available under sections 522, 544, 545, 547, 548, 550, and 724(a) of the Bankruptcy Code.

48.    The Court may grant relief under section 1521(a) of the Bankruptcy Code if the interests of "the creditors and other interested entities, including the debtor, are sufficiently protected."  11 U.S.C. § 1521(a).  Similarly, section 1507 of the Bankruptcy Code provides that, "if recognition is granted," a court "may provide additional assistance to a foreign representative under this title or under other laws of the United States."  11 U.S.C. § 1507.  Finally, section 105(a) of the Bankruptcy Code provides that the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

49.    The Foreign Representative requests the Court exercise its discretion under sections 105, 1507, and 1521 to grant the relief requested insofar as such relief exceeds that which is available by recognizing the Canadian Receivership as a "foreign main proceeding" and the Foreign Representative as a "foreign representative" as specified in the Bankruptcy Code.  The

granting of such relief is consistent with the goals of international comity and assistance to foreign courts embodied in chapter 15 of the Bankruptcy Code and is necessary to effectuate the objective of the Canadian Receivership.

50.     Indeed, as set forth above, by the Appointment Order, the Canadian Court expressly requested that courts in the United States recognize the Canadian Receivership and assist the Receiver and its agents in carrying out the terms of the Appointment Order (*i.e.*, the actions which the Appointment Order expressly empowers the Receiver to take on behalf of the Debtors and their property, as explained in detail above).  *See* Appointment Order, ¶¶ 31–32.

51.     Thus, in addition to the reasons set forth above, this Court should give full force and effect in the United States to the Appointment Order under well-established principles of international comity and specifically pursuant to sections 105(a), 1507, and 1521 of the Bankruptcy Code.

52.     Fair and efficient administration of the Canadian Receivership that protects all parties in interest requires that all creditors be bound by the terms of the Appointment Order as sanctioned by the Canadian Court.  *See Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 713-14 (2d Cir. 1987) ("The equitable and orderly distribution of a debtor's property requires assembling all claims against the limited assets in a single proceeding; if all creditors could not be bound, a plan of reorganization would fail."); *In re Energy Coal S.P.A.*, 582 B.R. 619, 626–27 (Bankr. D. Del. 2018) (acknowledging the broad principles of comity applied by U.S. courts in both recognition of foreign bankruptcies and post-recognition relief granted to foreign representatives).

53.     If the terms of the Appointment Order, and the orderly liquidation of the Debtors' assets, are not fully respected in the United States, there is a risk that certain of the Debtors'

creditors and contract counterparties could exercise contractual remedies and/or initiate proceedings in the United States against the Debtors or other parties protected by the Appointment Order. Additionally, as set forth above, the Receiver's efforts to obtain control of valuable estate assets located in the US, including trailers located in Texas and cash held in the CNB account, may continue to be thwarted. Such actions would likely result in the depletion of the Debtors' resources and would detrimentally affect the value of the Debtors' assets available for distribution to its creditors. Therefore, the relief requested herein is required to prevent individual creditors acting to frustrate the purpose of the Canadian Receivership by disregarding the binding Appointment Order, the objective of which is the fair, efficient, and orderly liquidation of the Debtors' property and the maximizing of value for all stakeholders.

## **CONCLUSION**

54.     The Foreign Representative respectfully submits that the Verified Petition satisfies the requirements for the recognition of the Foreign Representative as the Debtors' "foreign representative" and the Canadian Receivership as a "foreign main proceeding" and further requests entry of the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein.

## **NOTICE**

55.     The Foreign Representative will provide notice of this Motion consistent with Bankruptcy Rule 2002(q) and Local Rule 9013-1(a). The Foreign Representative proposes to notify all creditors and parties in interest of the filing of the Petitions and the Foreign Representative's request for entry of the Order in the form and manner set forth in the *Motion for Order Scheduling Recognition Hearing and Specifying Form and Manner of Service of Notice,*

filed contemporaneously herewith.  The Foreign Representative submits that, in view of the facts and circumstances, such notice is sufficient, and no other or further notice need be provided.

## **NO PRIOR REQUEST**

56.     No prior request for the relief sought in this Verified Petition has been made to this or any other court.

WHEREFORE, the Foreign Representative respectfully requests entry of the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other and further relief as is just and proper.

*[Remainder of page intentionally left blank.]*

Dated: July 21, 2026

Respectfully submitted,

/s/ *John R. Hardin*

John R. Hardin (TX Bar No. 24012784)
john.hardin@ashurstperkins.com
ASHURST PERKINS COIE US LLP
500 N. Akard Street, Suite 3300
Dallas, Texas 75201-3347
Telephone: (214) 965-7700

Tina N. Moss, (*pro hac vice* pending)
tina.moss@ashurstperkins.com
Karli K. Wade, (*pro hac vice* pending)
karli.wade@ashurstperkins.com
ASHURST PERKINS COIE US LLP
1155 Avenue of the Americas, 22nd Floor
New York, NY 10036-2711
Telephone: (212) 262-6900

*Attorneys for The Fuller Landau Group Inc.,
as Court-Appointed Receiver and Foreign
Representative for Debtors*

## VERIFICATION OF PETITION

I, Gary Abrahamson, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States of America as follows:

I am the President of The Fuller Landau Group Inc., the court-appointed Receiver and authorized Foreign Representative for the Debtors. As such, I have full authority to verify the foregoing Verified Petition on behalf of the Foreign Representative.

I have read the foregoing Verified Petition, and I am informed and believe that the factual allegations contained therein are true and accurate to the best of my knowledge, information, and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 20th day of July 2026
Toronto, Ontario
Canada

The Fuller Landau Group Inc., solely in its
capacity as court-appointed Foreign
Representative and not in its individual or
corporate capacity

BY: _____
Gary Abrahamson, President

## Certificate of Service

I certify that on July 21, 2026, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/John R. Hardin

John R. Hardin