**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 15 |
| LION FORCE TRANSPORT INC., *et al.*,[1] | Case No.: 26-90717 (ARP) |
| Debtors in a Foreign Proceeding. | (Joint Administration Pending) |

**DECLARATION OF FOREIGN REPRESENTATIVE PURSUANT TO 11 U.S.C. § 1515 AND RULE 1007(A)(4) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND IN SUPPORT OF VERIFIED PETITION FOR (I) RECOGNITION OF FOREIGN MAIN PROCEEDING, (II) RECOGNITION OF FOREIGN REPRESENTATIVE, AND <u>(III) RELATED RELIEF UNDER CHAPTER 15 OF THE BANKRUPTCY CODE</u>**

I, Gary Abrahamson, to the best of my information and belief, state as follows:

1.     I am over the age of 18 and, if called upon, could testify to all matters set forth in this declaration based upon my own personal knowledge, information contained in the books and records of the Lion Force Group (as defined below), and information contained in the RBC Application (as defined below), or as otherwise specified herein.  I am making this declaration in accordance with section 1515 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").

2.     I am President of The Fuller Landau Group Inc. ("<u>Fuller</u>"), the court-appointed Receiver (in such capacity, the "<u>Receiver</u>") and authorized foreign representative (in such capacity, the "<u>Foreign Representative</u>") of the above-captioned debtors ("<u>Lion Force Group</u>" or the "<u>Debtors</u>").  I am familiar with the Debtors, whose receivership proceeding (the "<u>Canadian</u>

---

[1]     The chapter 15 debtors in these chapter 15 cases (the "<u>Debtors</u>"), along with the last four digits of the Debtors' Canadian business number, are as follows: Lion Force Transport Inc. (4050); 2696942 Ontario Inc. (6942); 2854233 Ontario Inc. (4233).  The Debtors' executive headquarters are located at 27 Automatic Road, Brampton Ontario, L6S 5N8.

Receivership") is currently pending before the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court"), pursuant to section 243(1) of the *Bankruptcy and Insolvency Act*, R.S.C. 1985, c. B-3, as amended (the "BIA") and section 101 of the *Courts of Justice Act*, R.S.O. 1990, c. C.43, as amended (the "CJA"). As set forth more fully below, the Canadian receivership proceedings were commenced in the Canadian Court on May 1, 2026, on application of Royal Bank of Canada ("RBC"), a secured creditor of the Debtors (the "RBC Application").

3.      I hold a Bachelor of Commerce Degree from the University of the Witwatersrand in Accounting and Finance. I am a Chartered Insolvency and Restructuring Professional, and a Licensed Insolvency Trustee in Canada. I am a Member, CPA Ontario and CPA Canada. I am a Past Director of the Ontario Association of Insolvency and Restructuring Professionals.

4.      I have over 30 years' experience as a business revitalization, corporate restructuring, and insolvency specialist. My clients include major Canadian financial institutions, investors, national and boutique law firms, management, shareholders, and other stakeholders. I serve regularly as a court officer in insolvency proceedings and have acted as a court-appointed receiver, interim receiver and monitor, in various matters, including in litigation involving shareholder disputes.

5.      I submit this declaration in support of: (a) the official form chapter 15 petitions for each of the Debtors (collectively, the "Petitions") commencing the Debtors' chapter 15 cases (the "Chapter 15 Cases"); (b) the *Verified Petition for (I) Recognition of Foreign Main Proceedings, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* (the "Verified Petition"); (c) the *Motion for Provisional Relief Pursuant to Section 1519 of the Bankruptcy Code* (the "Provisional Relief Motion"); (d) the *Foreign Representative's Emergency Motion for Order (I) Scheduling Recognition Hearing and (II)*

*Specifying Form and Manner of Service of Notice* (the "Notice Procedures Motion"); and (e) the *Motion of Foreign Representative for Entry of Order Authorizing Joint Administration of Debtors' Chapter 15 Cases* (the "Joint Administration Motion").[2]  This declaration is intended to be read in conjunction with the sworn declaration of Roger Jaipargas dated as of the date hereof, which describes receivership law in Canada more generally.

6.      The Foreign Representative is seeking the relief requested in the Petitions, Verified Petition, Provisional Relief Motion, Notice Procedures Motion, and Joint Administration Motion to ensure the effectiveness of the Appointment Order (defined below) and the protections and powers contained therein in the United States.  The Receiver anticipates obtaining additional relief from the Canadian Court that may address issues related to the sale of the Debtors' assets, and to their U.S. customers and stakeholders.  Recognition of the Canadian Receivership will provide a forum for recognition and enforcement of such relief by the United States Bankruptcy Court for the Southern District of Texas (the "Court") and is necessary in order to fulfill its mandate of preserving, protecting, and realizing on the Property (as defined below) of the Debtors.

7.      Each of these matters and the relief requested by the Foreign Representative is described in greater detail below.

## I.      The Debtors' Business and Canadian Operations

8.      An in-depth summary of the Debtors' business and affairs, including (i) the Debtors' corporate organization, (ii) the secured creditors of the Debtors, and (iii) the events that precipitated the appointment of the Receiver, are set out in the Verified Petition, which is incorporated herein, and by the Affidavit of Tro DerBedrossian, sworn April 29, 2026 (the

---

[2] The Receiver is in the process of investigating the Debtors' assets and liabilities, the extent, validity, and priority of any security interests in its property, and potential claims held by or against the Debtors.  Statements made herein are made upon information and belief based on information currently available to the Receiver, may be subject to change, and are without prejudice to the rights and remedies that may be available to the Receiver under applicable law.

"DerBedrossian Affidavit") in support of the Application (a copy of which is attached hereto as

**Exhibit A**)[3].

9.      I understand that the Debtors are part of a group of seven companies, of which three

entities, Lion Force Transport Inc. ("Lion Force"), 2696942 Ontario Inc. ("269" and together with

Lion Force, the "Borrowers") and 2854233 Ontario Inc. ("285"), are Debtor-entities (collectively,

the "Credit Parties").  Although the Debtors are structured as stand-alone entities, as reflected in

the organizational chart below (submitted in the CCAA Application (as defined below)) it is my

understanding that prior to the Canadian Receivership, the Debtors along with the non-Debtor

affiliates operated as a single, integrated business enterprise.



10.      Lion Force was a logistics provider that serviced clients located in the Midwest and

Southern United States of America as well as Ontario and Quebec.  Lion Force is incorporated

under the *Business Corporations Act* (Ontario), and its registered head office is located at 27

Automatic Road, Brampton Ontario. I understand that Lion Force has approximately CAD

19,200,201 of book value of property and equipment, including trucks and trailers, and

approximately CAD 3,480,652 of accounts receivable. As of the date of these Petitions, the

Receiver has terminated all of Lion Force's remaining employees and operations.

11.      269 is incorporated under the *Business Corporations Act* (Ontario) and owns the

---

[3] The DerBedrossian Affidavit is attached hereto without exhibits, which are voluminous.  The exhibits will be provided by the Foreign Representative to the Court or a party upon request.

real property located at 27 Automatic Road, Brampton, Ontario (the "Brampton Facility") with a book value of approximately CAD 58,009,000.  Its registered head office is located at 18 Arctic Fox Crescent, Brampton, Ontario. This Brampton Facility served as the Debtors' principal place of business, housing its administrative offices and truck storage facilities.

12.     285 is incorporated under the *Business Corporations Act* (Ontario) and its registered head office is located at 6950 Kenderry Gate, Mississauga, Ontario.  285 previously owned real property located in Ontario, which was liquidated prior to the Application and the proceeds paid to RBC to satisfy obligations under the Credit Agreements and to another secured creditor of 285.

13.     The Debtors' books and records are located at the Brampton Facility. All of the Debtors' directors and officers are located in Ontario, where, prior to the Canadian Receivership, key corporate decisions for the Debtors were made.  Since Fuller's appointment as Receiver, and as of the filing of the Petitions, management decisions in respect of the Debtors are made at Fuller's offices located at 151 Bloor Street West, 12th floor, Toronto ON, M5S 1S4.

## II.     The RBC Credit Agreements, Defaults, and Forbearance Agreements

14.     Pursuant to a loan agreement dated as of March 11, 2024, between RBC as lender and Lion Force as borrower, RBC provided Lion Force with a CAD 6,000,000 revolving demand facility, as well as a CAD 1,500,000 revolving lease line of credit, and a CAD 125,000 credit card facility available in CAD and USD (the "Lion Force Credit Agreement").  Pursuant to an amended and restated loan agreement dated September 9, 2024 between RBC as lender and 269 as borrower, RBC provided 269 with a CAD 42,000,000 non-revolving term facility, as well as a CAD 2,682,000 non-revolving term facility and a CAD 15,000 credit card facility available in CAD and USD (the "269 Credit Agreement" and together with the Lion Force Credit Agreement, the "Credit Agreements").  Each of the Debtors has cross-guaranteed the Borrowers' obligations to RBC

pursuant to the following written corporate guarantees and postponements of claims:

a. the guarantee and postponement of claim limited to the principal amount of CAD 7,625,000 plus interest, dated April 11, 2024, granted by 269 regarding the obligations of Lion Force to RBC;

b. the guarantee and postponement of claim limited to the principal amount of CAD 7,625,000 plus interest, dated April 11, 2024, granted by 285 regarding the obligations of Lion Force to RBC;

c. the guarantee and postponement of claim limited to the principal amount of CAD 55,864,000 plus interest, dated April 11, 2024, granted by 285 regarding the obligations of 269 to RBC; and

d. the guarantee and postponement of claim limited to the principal amount of CAD 55,864,000 plus interest, dated April 11, 2024, granted by Lion Force regarding the obligations of 269 to RBC.

15. In addition, Lion Force's obligations to RBC, including, without limitation, those under the Credit Agreements, are also guaranteed by Honey Hundal, Sukjiwan Singh Kaijla, and Maninder Singh Nijjar, the Debtors' sole directors and officers (the "Personal Guarantors") pursuant to the written joint and several personal guarantee and postponement of claim limited to the principal amount of CAD 7,625,000 plus interest, dated April 11, 2024 (the "Personal Guarantees").

16. As detailed in the DerBedrossian Affidavit, the Borrowers have been in default of their obligations to RBC under the Credit Agreements since September of 2024. On February 6, 2025, RBC entered into a first forbearance agreement with the Credit Parties. This forbearance agreement was extended several times, and RBC and the Credit Parties entered into two amended forbearance agreements. Through the entire forbearance period, the Credit Parties defaulted on their obligations to RBC. On March 6, 2026, RBC proceeded to make formal written demand on the Debtors and the Personal Guarantors for payment of the amounts owed to RBC in respect of the Credit Agreements, the corresponding corporate guarantees, and the Personal Guarantees.

### III.    The Canadian Receivership and Appointment Order

17.    On May 1, 2026, following the defaults by the Borrowers, RBC filed its Notice of Application under the BIA and CJA seeking to have a receiver appointed (the "Canadian Receivership").  On May 14, 2026, the Debtors, in conjunction with three non-Debtor entities, filed a competing application to pursue a restructuring proceeding under the Canadian *Companies' Creditors Arrangement Act* (the "CCAA Application").

18.    On May 15, 2026, the Canadian Court conducted a hearing for the appointment of the Receiver.  A copy of the Canadian Court's endorsement (i.e. the reasons for judgment) with respect the RBC Application and CCAA Application is attached hereto as **Exhibit B**.  The Canadian Court entered an order (the "Appointment Order") dismissing the CCAA Application and appointing Fuller as the Receiver, without security, over all of the assets, undertakings and properties of the Debtors acquired for, or used in relation to, businesses carried on by the Debtors, and all proceeds thereof (the "Property").  A true and correct copy of the Appointment Order is attached hereto as **Exhibit C**.

19.    The Appointment Order vests the Receiver with broad power and control over the Debtors' assets and business, including the authority to take possession of and control the Debtors' assets and business.  Specifically, the Appointment Order grants the Receiver the following powers and duties:

a.    to take possession of and exercise control over the Property and any and all proceeds, receipts and disbursements arising out of or from the Property;

b.    to receive, preserve, and protect the Property, or any part or parts thereof, including, but not limited to, the changing of locks and security codes, the relocating of Property to safeguard it, the engaging of independent security personnel, the taking of physical inventories and the placement of such insurance coverage as may be necessary or desirable;

c.    to manage, operate, and carry on the business of the Debtors, including the powers to enter into any agreements, incur any obligations in the ordinary course of

business, cease to carry on all or any part of the business, or cease to perform any contracts of the Debtors;

d.    to engage consultants, appraisers, agents, experts, auditors, accountants, managers, counsel and such other persons from time to time and on whatever basis, including on a temporary basis, to assist with the exercise of the Receiver's powers and duties, including without limitation those conferred by the Appointment Order;

e.    to purchase or lease such machinery, equipment, inventories, supplies, premises or other assets to continue the businesses of the Debtors or any part or parts thereof;

f.    to receive and collect all monies and accounts now owed or hereafter owing to the Debtors and to exercise all remedies of the Debtors in collecting such monies, including, without limitation, to enforce any security held by the Debtors;

g.    to settle, extend or compromise any indebtedness owing to the Debtors;

h.    to execute, assign, issue and endorse documents of whatever nature in respect of any of the Property, whether in the Receiver's name or in the name and on behalf of the Debtors, for any purpose pursuant to the Appointment Order;

i.    to initiate, prosecute and continue the prosecution of any and all proceedings and to defend all proceedings now pending or hereafter instituted with respect to the Debtors, the Property or the Receiver, and to settle or compromise any such proceedings, and related appeals;

j.    to market any or all of the Property, including advertising and soliciting offers in respect of the Property or any part or parts thereof and negotiating such terms and conditions of sale as the Receiver in its discretion may deem appropriate;

k.    to sell, convey, transfer, lease or assign the Property or any part or parts thereof out of the ordinary course of business,

   i.    without the approval of the Canadian Court in respect of any transaction not exceeding $250,000, provided that the aggregate consideration for all such transactions does not exceed $500,000; and

   ii.   with the approval of the Canadian Court in respect of any transaction in which the purchase price or the aggregate purchase price exceeds the applicable amount set out in the preceding clause;

   and in each such case notice under subsection 63(4) of the Ontario *Personal Property Security Act*, or section 31 of the Ontario *Mortgages Act*, as the case may be, shall not be required;

l.    to apply for any vesting order or other orders necessary to convey the Property or any part or parts thereof to a purchaser or purchasers thereof, free and clear of any liens or encumbrances affecting such Property;

-8-

m.      to report to, meet with and discuss with such affected Persons (as defined below) as the Receiver deems appropriate on all matters relating to the Property and the receivership, and to share information, subject to such terms as to confidentiality as the Receiver deems advisable;

n.      to register a copy of the Appointment Order and any other orders in respect of the Property against title to any of the Property;

o.      to make an assignment into bankruptcy on behalf of any of the Debtors and for Fuller to act as trustee in bankruptcy for any of the Debtors;

p.      to apply for any permits, licenses, approvals or permissions as may be required by any governmental authority and any renewals thereof for and on behalf of and, if thought desirable by the Receiver, in the name of the Debtors;

q.      to enter into agreements with any trustee in bankruptcy appointed in respect of the Debtors, including, without limiting the generality of the foregoing, the ability to enter into occupation agreements for any property owned or leased by the Debtors;

r.      to exercise any shareholder, partnership, joint venture or other rights which the Debtors may have; and

s.      to take any steps reasonably incidental to the exercise of these powers or the performance of any statutory obligations.

*See* Appointment Order ¶ 3.

20.     The Appointment Order further provides that, where the Receiver takes any such actions or steps, the Receiver shall be exclusively authorized and empowered to do so, to the exclusion of all other Persons (as defined in the Appointment Order), including the Debtors, and without interference from any other Person.  *Id.*

21.     The Appointment Order also includes the following "stay" provisions to be in force:

**NO PROCEEDINGS AGAINST THE RECEIVER**

9. **THIS COURT ORDERS** that no proceeding or enforcement process in any court or tribunal (each, a "Proceeding"), shall be commenced or continued against the Receiver except with the written consent of the Receiver or with leave of this Court.

Appointment Order ¶ 9.

**NO PROCEEDINGS AGAINST THE DEBTORS OR THE PROPERTY**

> 10. **THIS COURT ORDERS** that no Proceeding against or in respect of the Debtors or the Property shall be commenced or continued except with the written consent of the Receiver or with leave of this Court and any and all Proceedings currently under way against or in respect of the Debtors or the Property are hereby stayed and suspended pending further Order of this Court.

*Id.* ¶ 10.

### NO EXERCISE OF RIGHTS OR REMEDIES

> 11. **THIS COURT ORDERS** that all rights and remedies against the Debtors, the Receiver, or affecting the Property, are hereby stayed and suspended except with the written consent of the Receiver or leave of this Court, provided however that this stay and suspension does not apply in respect of any "eligible financial contract" as defined in the BIA, and further provided that nothing in this paragraph shall (i) empower the Receiver or the Debtors to carry on any business which the Debtors are not lawfully entitled to carry on, (ii) exempt the Receiver or the Debtors from compliance with statutory or regulatory provisions relating to health, safety or the environment, (iii) prevent the filing of any registration to preserve or perfect a security interest, or (iv) prevent the registration of a claim for lien.

*Id.* ¶ 11.

22.     The Appointment Order authorizes the Receiver to act as the foreign representative of the Debtors in connection with the Verified Petition and expressly authorizes the Receiver to seek recognition of the Canadian Receivership in the United States via chapter 15 of the Bankruptcy Code. *See id.* ¶ 32. The Appointment Order provides, in relevant part, as follows:

> **THIS COURT ORDERS** that the Receiver be at liberty and is hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order, and that the Receiver is authorized and empowered to act as a representative in respect of the within proceedings for the purpose of having these proceedings recognized in a jurisdiction outside Canada, including acting as a foreign representative of the Debtors to apply to the United States Bankruptcy Court for relief pursuant to Chapter 15 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1530, as amended.

-10-

*Id.*

23.     The Appointment Order requests that courts in the United States recognize the Canadian Receivership and assist the Receiver and its agents in carrying out the terms of the Appointment Order. *See id.* ¶ 31.

24.     Finally, the Appointment Order granted the Receiver and its counsel a charge (the "Receiver's Charge") on the Property, as security for payment of their reasonable fees and disbursements (in each case at their standard rates and charges unless otherwise ordered by the Court), both before and after the issuance of the Appointment Order. The Receiver's Charge forms a first charge on the Property in priority to all security interests, trusts, liens, charges and encumbrances, statutory or otherwise, in favor of any Person, subject to sections 14.06(7), 81.4(4), and 81.6(2) of the BIA. *See id.* ¶ 19. The Appointment Order also authorizes the Receiver to borrow funds as it considers necessary provided that the amount does not exceed CAD 1,000,000. Such funds are subject to a charge on the Property, subordinate only to the Receiver's Charge and the charges set out in sections 14.06(7), 81.4(4), and 81.6(2) of the BIA. *See id.* ¶ 22.

**IV.     Key U.S. Assets and Operations**

25.     Lion Force provided transportation logistics to customers located in the United States and Canada. As of the commencement of the Canadian Receivership, I understand that Lion Force has approximately 80 trailers located in Texas and Michigan. Lion Force also owns accounts receivable in excess of $1,900,000 owed to Lion Force by, among others, contract counterparties subject to agreements governed by US law and for whom Lion Force provided transportation services in the US. The Receiver is in the process of attempting to collect these accounts.

26.     Lion Force also has a bank account at City National Bank, (operating as RBC Bank (Georgia), N.A.) located in North Carolina with a balance of $173,165.99 USD, as of July 14, 2026.

27.     The Receiver has provided its U.S. counsel, Ashurst Perkins Coie US LLP, with an attorney retainer in the amount of $50,000 USD, which is held in its attorney trust account maintained in Dallas, TX. The retainer was funded to support the Debtors' U.S. legal representation, including the commencement and prosecution of these Chapter 15 Cases and related matters.

V.      **The Chapter 15 Proceeding**

28.     These Chapter 15 Cases were commenced to ensure that the powers and protections granted to the Receiver by the Canadian Court in the Appointment Order are effective and enforceable in the United States and that the Receiver has a forum in which to seek relief with respect to issues relating to U.S.-based assets of the Debtors.

29.     Fuller was authorized pursuant to the Appointment Order to act as the Foreign Representative of the Canadian Receivership and to seek recognition and approval of the Canadian Receivership as necessary, including as "foreign main proceedings" under the Bankruptcy Code.

30.     On the date hereof (the "Petition Date"), and in my capacity as the Foreign Representative of the Debtors, Fuller filed petitions under chapter 15 of the Bankruptcy Code for recognition of the Canadian Receivership, thereby commencing the Debtors' Chapter 15 Cases.

31.     For the reasons set forth in the Verified Petition, I understand and believe that, in accordance with the requirements of the Bankruptcy Code, (i) the Debtors are eligible to be debtors in these Chapter 15 Cases, (ii) the Canadian Receivership qualifies as a "foreign main proceeding," (iii) the Debtors' center of main interests is Canada, and (iv) that recognition of the Canadian Receivership as a "foreign main proceeding" is consistent with the purpose of chapter 15 and will allow the Receiver to realize on the Debtors' assets in the most efficient, orderly, and economical manner possible while respecting the rights of creditors.

32.     Through the Provisional Relief Motion, provisional relief is sought against the

following parties: (a) secured creditors; (b) counterparties to certain of Lion Force's contracts; (c) any parties claiming interests in the U.S. property; and (d) other creditors and parties in interest, as set forth on the Consolidated Verified List Pursuant to Fed. R. Bankr. P. 1007(a)(4), 1008, and 2002(q) attached to the Petitions.

33. The Foreign Representative commenced these Chapter 15 Cases to provide the Receiver with the breathing room and stability necessary to realize on the Debtors' assets in the most efficient, orderly, and economical manner possible, including by seeking certain provisional relief between the Petition Date and the Bankruptcy Court's entry of the proposed order recognizing the Canadian Receivership. Such provisional relief includes, among other things, the Bankruptcy Court's immediate ordering of the application of section 362 of the Bankruptcy Code to these Chapter 15 Cases. Without such relief, the Debtors may be exposed to potentially adverse action in the United States by certain creditors and other parties in interest (including contract counterparties) who may disregard the stay imposed under the Appointment Order and disrupt the Receiver's efforts.

34. The Foreign Representative anticipates that the Canadian Court will issue further orders that will resolve disputes related to the assets of the Debtors and facilitate the sale or liquidation of the Debtors' assets. The Receiver anticipates requiring recognition of such orders because certain of the Debtors' assets are located within the jurisdiction of the United States. The Foreign Representative also seeks recognition of the Canadian Receivership to provide a forum for recognition of such orders.

35. In compliance with the requirements of Bankruptcy Rule 1007(a)(4)(B), Fuller, as the Foreign Representative, shall maintain control of and be authorized to administer the Canadian Receivership. The service address for Fuller in these Chapter 15 Cases is 151 Bloor Street West,

12th floor, Toronto ON, M5S 1S4. I am aware of no other persons or bodies authorized to administer foreign proceedings on behalf of Lion Force.

36. For the reasons stated in this Declaration, in the Petitions, the Verified Petition, the Notice Procedures Motion, the Joint Administration Motion, and the Provisional Relief Motion, I request that the Verified Petition and the Provisional Relief Motion be granted in their entireties, together with such other and further relief as the Court may deem just and proper.

*[Remainder of page left intentionally blank]*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this **bl** day of July 2026
Toronto, Ontario
Canada

**The Fuller Landau Group Inc.,**
solely in its capacity as court-appointed Receiver
and Foreign Representative for the Debtors and
not in its individual or corporate capacity

BY:  _____
Gary Abrahamson, President

-15-

## **Certificate of Service**

I certify that on July 21, 2026, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ *John R. Hardin*

John R. Hardin