**Exhibit A**

**Declaration of Tro Derbedrossian**

019

Court File No. CL-26-00000182-0000    6

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

B E T W E E N:

**ROYAL BANK OF CANADA**

Applicant

- and -

**LION FORCE TRANSPORT INC., 2696942 ONTARIO INC. and
2854233 ONTARIO INC.**

Respondents

**APPLICATION UNDER SUBSECTION  243(1) OF THE *BANKRUPTCY AND
INSOLVENCY ACT*, R.S.C. 1985, c. B-3, AS AMENDED AND SECTION 101 OF THE
*COURTS OF JUSTICE ACT*, R.S.O. 1990, c. C.43, AS AMENDED**

**AFFIDAVIT OF TRO DERBEDROSSIAN**
**(sworn April 29, 2026)**

I, **TRO DERBEDROSSIAN**, of the City of Toronto, in the Province of Ontario, **MAKE**

**OATH AND SAY AS FOLLOWS**:

1.      I am a Senior Manager, Special Loans and Advisory Services, of Royal Bank of Canada

("**RBC**").  RBC is a creditor of the respondents, Lion Force Transport Inc. ("**Lion Force**"),

2696942 Ontario Inc. ("**269**" and, together with Lion Force, the "**Borrowers**") and 2854233

Ontario Inc. ("**285**" and, together with the Borrowers, the "**Debtors**").

2.      I am responsible for management of the credit facilities made available by RBC to the

Borrowers and of the guarantees and security granted to RBC by the Debtors, as applicable.  As

such, I have personal knowledge of the matters to which I hereinafter depose.  Where I do not have

personal knowledge of the matters set out herein, I have stated the source of my information and, in all such cases, believe it to be true.

**PURPOSE**

3.      I am swearing this Affidavit in support of an application by RBC for an Order appointing The Fuller Landau Group Inc. ("**Fuller**") as receiver, without security, of all the assets, undertakings and properties of the Debtors acquired for, or used in relation to businesses carried on by the Debtors and all proceeds thereof (collectively, the "**Property**"), including, without limitation, the real property municipally known as 27 Automatic Road, Brampton, Ontario and legally described in PIN 14209-0100 (LT) (the "**Real Property**").

**DESCRIPTION OF THE DEBTORS, THE BUSINESSES AND THE REAL PROPERTY**

4.      The Debtors' corporate profile reports are attached collectively as **Exhibit "A"** to this Affidavit.  They indicate that the Debtors are all incorporated under the *Business Corporations Act* (Ontario) and that the Debtors' registered offices and mailing addresses are all located in the Regional Municipality of Peel.  They also indicate that Honey Hundal ("**Hundal**"), Sukhjiwan Singh Kajla ("**Kajla**") and Maninder Singh Nijjar ("**Nijjar**" and, together with Hundal and Kajla, the "**Personal Guarantors**", and together with the Debtors, the "**Credit Parties**") are the Debtors' sole directors and officers.

5.      The Debtors are in the trucking industry.  According to its website, Lion Force is a logistics provider that "*services clients located in the Midwest and Southern United States of America (USA) as well as across Ontario and Quebec.*"   According to the U.S. Department of Transportation's Federal Motor Carrier Safety Administration website, Lion Force has 227

vehicles and 300 drivers.  Copies of these website printouts are attached collectively as **Exhibit "B"** to this Affidavit.

6.      Attached to this Affidavit as **Exhibit "C"** is a copy of the Real Property's parcel register. 269 holds title to the Real Property, which is a commercial building and truck depot located in Brampton, Ontario.

**RBC'S LOANS TO THE BORROWERS AND RELATED SECURITY**

7.      The Borrowers are indebted to RBC in connection with certain credit facilities made available by RBC to the Borrowers (the "**Credit Facilities**") pursuant to and under the terms of:

(a)      in the case of the Credit Facilities advanced to Lion Force, a loan agreement dated March 11, 2024 between RBC and Lion Force (the "**Lion Force Credit Agreement**"); and

(b)      in the case of the Credit Facilities advanced to 269, an amended and restated loan agreement dated September 9, 2024 between RBC and 269 (the "**269 Credit Agreement**" and, together with the Lion Force Credit Agreement, the "**Credit Agreements**").

8.      Copies of the Credit Agreements are attached collectively as **Exhibit "D"** to this Affidavit.

9.      Each of the Debtors has cross-guaranteed the Borrowers' obligations to RBC, including, without limitation, those under the Credit Agreements, pursuant to the following written corporate guarantees and postponements of claim (collectively, the "**Corporate Guarantees**"):

(a)     the guarantee and postponement of claim limited to the principal amount of $7,625,000 plus interest, dated April 11, 2024, granted by 269 regarding the obligations of Lion Force to RBC;

(b)     the guarantee and postponement of claim limited to the principal amount of $7,625,000 plus interest, dated April 11, 2024, granted by 285 regarding the obligations of Lion Force to RBC;

(c)     the guarantee and postponement of claim limited to the principal amount of $55,864,000 plus interest, dated April 11, 2024, granted by 285 regarding the obligations of 269 to RBC; and

(d)     the guarantee and postponement of claim limited to the principal amount of $55,864,000 plus interest, dated April 11, 2024, granted by Lion Force regarding the obligations of 269 to RBC.

10.     Copies of the Corporate Guarantees are attached collectively as **Exhibit "E"** to this Affidavit.

11.     Lion Force's obligations to RBC, including, without limitation, those under the Credit Agreements, are also guaranteed by the Personal Guarantors pursuant to the written joint and several personal guarantee and postponement of claim limited to the principal amount of $7,625,000 plus interest, dated April 11, 2024 (the "**Personal Guarantee**").

12.     A copy of the Personal Guarantee is attached as **Exhibit "F"** to this Affidavit.

13.     As security for their obligations to RBC, including, without limitation, under the Credit Agreements and the Corporate Guarantees, as applicable, the Debtors provided security in favour of RBC (the "**Security**"), including, without limitation:

(a)   general security agreements from each of the Debtors, copies of which are attached collectively as **Exhibit "G"** to this Affidavit (and registrations in respect of which were duly made pursuant to the *Personal Property Security Act* (Ontario) (the **"PPSA"**)); and

(b)   in the case of 269, the charge/mortgage registered on title to the Real Property in the registered principal amount of $44,682,000 dated April 17, 2024 (the **"Charge"**), and a corresponding general assignment of rents dated April 17, 2024 (the **"GAR"**).  Copies of the Charge, the standard charge terms referenced therein, and the GAR are attached collectively as **Exhibit "H"** to this Affidavit.

**OTHER REGISTERED SECURED CREDITORS AGAINST THE DEBTORS**

14.   As indicated on the parcel register attached as Exhibit "C" hereto, there are no other active charges registered on title to the Real Property aside from the Charge and the GAR.

15.   Copies of the PPSA certified search results for each of the Debtors with currency to April 22, 2026, are attached collectively as **Exhibit "I"** to this Affidavit.

16.   These certified PPSA search results confirm that RBC has registered against all collateral classifications of all the Debtors except for consumer goods (the "**General RBC Registrations**"). All other registrations against the Debtors appear to pertain to certain specific collateral and/or are registered after the applicable General RBC Registrations.

17.   I am further advised by RBC's counsel, and verily believe, that all registrants under the PPSA will be served with a copy of the within application.

18.     With respect to priority as between BDC and RBC, the Debtors, BDC and RBC entered into a priority agreement dated April 16, 2024 (the "**Priority Agreement**"), pursuant to which BDC subordinated its security with respect to the assets of Lion Force to RBC.  Additionally, the Priority Agreement provides that RBC subordinated its security with respect to the assets of 269 and 285 to BDC.

19.     A copy of the Priority Agreement is attached hereto as **Exhibit "J"**.

20.     As noted in the Priority Agreement, the property municipally known as 43 Bonds Corner Road, Woodstock, Ontario and as legally described in PIN 00110-0014 (LT) (the "**Woodstock Property**") is owned by 285.  Attached to this Affidavit as **Exhibit "K"** is a copy of the parcel register for the Woodstock Property. As reflected in the parcel register, RBC held a charge/mortgage in the registered principal amount of $2,513,000 (the "**Woodstock Charge**"), along with a corresponding general assignment of rents (the "**Woodstock GAR**"), registered as instruments no. CO294623 and CO294624, respectively.

21.     On or about March 31, 2026, 285 completed a sale of the Woodstock Property.  Pursuant to the sale, RBC received $1,325,304.98, after BDC's first-ranking mortgage was repaid. Subsequently, RBC proceeded to discharge the Woodstock Charge and the Woodstock GAR.

**DEFAULT, VARIOUS FORBEARANCE ARRANGEMENTS, AND DEMAND**

22.     With the exception of the two term loans owing by 269 and the lease facilities owing by Lion Force, all the other Credit Facilities are repayable on demand.

23.     The Borrowers have been in default of their obligations to RBC under the Credit Agreements since September of 2024.  The monetary defaults include, among other things: (i) the

overdraft on Lion Force's operating line; (ii) the prior accumulation of lease payment defaults by both of the Borrowers; (iii) the accumulation of priority payable obligations, including, without limitation, significant property tax arrears in respect of the Real Property; (iv) the accumulation of 269's term loan payment defaults; and (v) the failure to pay Fuller's invoices as financial advisor to RBC per the Original Forbearance Agreement requirements.  The Borrowers have also failed to comply with their various reporting requirements under the Credit Agreements and have failed to maintain the required financial covenant ratios, including the ratio of Total Liabilities to Tangible Net Worth and the Fixed Charge Coverage (as each term is defined in the Credit Agreements, as applicable) (collectively, the "**Existing Defaults**").  As of the date of this Affidavit, the Existing Defaults have not been cured.

24.     In light of the Existing Defaults, RBC entered into a first forbearance agreement with the Credit Parties dated February 6, 2025 (the "**Original Forbearance Agreement**").  Pursuant to the Original Forbearance Agreement, RBC agreed to forbear from exercising its rights and remedies until March 16, 2025, or earlier upon the occurrence of an Intervening Event (as defined therein) or additional events of default.  As part of the Original Forbearance Agreement, the Credit Parties agreed to cooperate fully with Fuller as the financial advisor to RBC in connection with this matter, whose mandate was further specified pursuant to an engagement letter dated January 23, 2025 (the "**Engagement Letter**").

25.     Copies of the Original Forbearance Agreement and the Engagement Letter are attached collectively as **Exhibit "L"** to this Affidavit.

26.     The Original Forbearance Agreement was subsequently amended and extended on several occasions.  On March 28, 2025, the parties entered into an amended forbearance agreement

permitting a temporary borrowing "bulge" of approximately $2.2 million (the "**Temporary Bulge**") and extending the Forbearance Period (as defined therein) to April 7, 2025 (the "**First Amending Agreement**"). Among other things, Lion Force was required to provide evidence of a $1.5 million equity injection to reduce the Temporary Bulge. The Debtors did make a total equity injection of $1.25 million in various installments between October 2, 2025 and November 18, 2025, but the terms of this extension agreement were largely not complied with.

27. On May 9, 2025, the Forbearance Period under the Original Forbearance Agreement was further extended to August 31, 2025 pursuant to an amended and restated forbearance agreement (the "**Amended and Restated Forbearance Agreement**"). Pursuant to the terms of the Amended and Restated Forbearance Agreement, the Credit Parties were expected to indefeasibly repay the amounts owing under the Credit Facilities to RBC by August 31, 2025. The Borrowers were also required to comply with various reporting obligations, including providing copies of any refinancing term sheets and financial information required by Fuller regarding priority obligations. The terms of the Amended and Restated Forbearance Agreement were also not complied with. Specifically, the Borrowers failed to provide (i) monthly company prepared financial statements comprised of balance sheets, income statements and cash flow statements within 45 days of each month-end, and (ii) monthly cash flow forecasts for the period from May 31, 2025 to August 31, 2025, with a monthly variance analysis to be provided within 7 days of each month end.

28. On September 12, 2025, the Credit Parties entered into a second amended and restated forbearance agreement (the "**Second Amended and Restated Forbearance Agreement**"), which provided for a Forbearance Period to December 31, 2025, in accordance with the terms stated therein. During the pendency of this Forbearance Period, the Credit Parties continued to default on their obligations to RBC. Among other things, Lion Force failed to deliver its 2025 fiscal year-

end financial statements within 90 days of year end, failed to provide monthly financial reporting including cash flow projections, a cash flow model and actual-to-forecast variance reports, and was still not current in respect of certain priority obligations.  Furthermore, as a condition of the Second Amended and Restated Forbearance Agreement, Lion Force was required to make the following paydowns in respect of the amounts owing to RBC under the Credit Agreements: (i) $1 million within two weeks of signing; (ii) a further $1 million within 30 days of signing; and (iii) a $20,000 forbearance fee due on execution. The terms of this extension were also not complied with.

29.     Despite the above-noted defaults, a final forbearance extension was entered into on December 19, 2025, extending the forbearance period to March 31, 2026.  That agreement again required the Credit Parties, as applicable, to, among other things, remedy outstanding reporting deficiencies and ensure that all priority payables, including, without limitation, the property tax arrears owing on the Real Property, were brought current.  The Credit Parties were also required to make a capital injection of $750,000 by no later than December 31, 2025.  The terms of this extension, including financial reporting on cash flow projections, monthly financial statements and actual-to-forecast variance reports, were also not fulfilled.

30.     Copies of the First Amending Agreement, the Amended and Restated Forbearance Agreement, the Second Amended and Restated Forbearance Agreement, and the extension thereto are attached collectively as **Exhibit "M"** to this Affidavit.

31.     I am advised by Fuller, and verily believe, that Lion Force failed to fulfill its payroll obligations to its drivers in January 2026 and that there are arrears currently owing to Lion Force's fuel supplier(s).

32.     In addition, RBC has become aware of outstanding municipal tax arrears in respect of the Real Property.  Attached as **Exhibit "N"** to this Affidavit is a copy of the Real Property's property tax certificate from the municipality dated March 2, 2026, reflecting arrears (including penalties and interest) of $547,783.87 as of such date (plus accruing taxes, penalties and interest).

33.     As a result of the foregoing (among other things), on March 3, 2026, RBC proceeded to make formal written demand on the Debtors and the Personal Guarantors, as applicable, for payment of the amounts owed to RBC in respect of the Credit Facilities, the corresponding Corporate Guarantees and the Personal Guarantee (the "**Demand Letters**").  The Demand Letters sent to the Debtors were each accompanied by notices of intention to enforce security (the "**BIA Notices**") pursuant to subsection 244(1) of the *Bankruptcy and Insolvency Act* (Canada).  Copies of the Demand Letters and the BIA Notices are attached collectively as **Exhibit "O"** to this Affidavit.

34.     As set out in the Demand Letters, CAD$51,242,543.76 and USD$1,353,017.84 were due and owing to RBC for principal and interest pursuant to the Credit Facilities as of March 3, 2026 as follows:

| Credit Facilities under the Lion Force Credit Agreement | | |
| --- | --- | --- |
| | Operating facility | $6,911,949.68 |
| | CAD credit card facility | $32,296.30 |
| | US credit card facility | USD$12,386.50 |
| | Lease facility ending 863 | $788,559.20 |
| | Lease facility ending 370 | $160,472.29 |
| | Lease facility ending 899 | $27,743.83 |
| | Lease facility ending 850 | $156,194.40 |
| | US lease facility ending 629 | USD$355,551.09 |
| | US lease facility ending 986 | USD$414,163.22 |
| | US lease facility ending 987 | USD$367,002.40 |
| | US lease facility ending 988 | USD$203,914.63 |
| Credit Facilities under 269 Credit Agreement | | |
| | Term facility | $41,133,171.92 |
| | Second term facility | $2,032,156.14 |

| | CAD$51,242,543.76 and USD$1,353,017.84 |
|---|---|

35.     The Demand Letters were not honoured by any of the Credit Parties and no payments have been made to RBC in respect of the Credit Facilities, other than the proceeds from the sale of the Woodstock Property.

36.     In early April 2026, Lion Force requested that RBC pay, or otherwise make available, $205,130.67 in respect of outstanding insurance premiums in order to reinstate Lion Force's policy over its fleet of trucks and trailers.  Subsequently, RBC requested the arrear notices from the insurance provider.  To date, RBC has not received such notices. In light of the circumstances as outlined above, RBC refused to pay or make the requested amount available to Lion Force.  RBC is currently unaware of whether Lion Force's insurance remains in place.

37.     On April 22, 2026, RBC received a Workplace Safety & Insurance Board notice of garnishment in respect of Lion Force, issued by the Ontario Superior Court of Justice bearing court file number CV-26-00094621-0000 (the "**WSIB Order**"). The order amount contained in the WSIB Order is $623,703.86. RBC received no prior indication from the Debtors with respect to the WSIB Order or the amount claimed therein.

38.     However, since receiving the WSIB Order, a representative of Lion Force has provided a notice of termination of garnishment. As such, I understand that the garnishment pursuant to the WSIB Order is no longer in effect.

39.     More recently, I was advised on April 29, 2026 that both of Lion Force's Export Development Canada ("**EDC**") insurance policies (domestic receivables policy number SD108293 and export receivables policy number SE108293) have been cancelled.  I further understand from

a representative of EDC that since both policies have been cancelled, a new application along with payment of all outstanding premiums, is required to reinstate the cancelled policies.

40.     Despite recent discussions between counsel for RBC and counsel for the Debtors, along with their respective financial advisors, RBC does not have adequate visibility into the Debtors' operations and has serious concerns with respect to management's ability to continue to run the business.

41.     At this stage, RBC has lost faith in the Debtors' management, has not been provided with a binding refinancing commitment letter or an agreement of purchase and sale for the Real Property and therefore considers the only reasonable and prudent path forward is to take any and all steps necessary to protect the Property by having a receiver appointed, and it is within RBC's rights under the Security to do so.

**APPOINTMENT OF A RECEIVER**

42.     In the circumstances set out above, I believe that it is just and equitable that a receiver be appointed.   A receiver is necessary for the protection of the Property.   RBC believes that the appointment of a receiver would enhance the prospect of recovery by RBC and protect all stakeholders.

43.     RBC proposes that Fuller be appointed as the receiver.

44.     Fuller is a licensed insolvency trustee and is familiar with the circumstances of the Debtors and its arrangements with RBC.

45.     Fuller has consented to act as receiver should the Court so appoint it.

031

13

46.　　This Affidavit is made in support of the within application, and for no other or improper purpose whatsoever.

| | |
|---|---|
| **SWORN** by Tro DerBedrossian at<br>the City of Toronto, in the Province of<br>Ontario, before me on this 29th day of<br>April, 2026 in accordance with<br>O. Reg. 431/20, Administering Oath<br>or Declaration Remotely. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

_Samantha Hans_                          )          **TRO DERBEDROSSIAN**
Commissioner for taking affidavits, etc.
Samantha Hans LSO # 84737H